# Commonwealth *v.* The Punxsutawney Water Company.

*Corporations—Water companies—Forfeiture of charter—Quo warranto.*

Where a water company continues faithfully to supply water to the borough for the supply of which it was chartered, its charter cannot be forfeited because it entered into an agreement with another water company supplying an adjoining borough, temporarily to supply that company with water, but only upon condition that it could terminate the agreement upon twenty-four hours' notice whenever it might need all of its water for supplying its own customers. Such an agreement cannot possibly be construed as such a conveyance of property and franchises as will incapacitate the first water company from performing its corporate duties.

*Corporation—Water companies—Sale by stockholders of their stock to another company.*

Where a water company continues faithfully to perform its duties, its charter cannot be forfeited because a majority of the stockholders sold their stock to an individual who purchased and paid for it with individual money, and subsequently assigned the stock to another water company.

A corporation which acquires a majority of the capital stock of another corporation does not acquire the property and franchises of the latter. The transfer of a majority of the stock is not a transfer of the property of the company.

The fact that a water company, which had acquired the majority of the stock of another water company, has included in a corporate mortgage the property of the latter company, is no ground for forfeiting the charter of the latter company, if it continues to perform its corporate duties.

Argued Oct. 10, 1900. Appeal, No. 86, Oct. T., 1900, by plaintiff, from judgment of C. P. Jefferson Co., Nov. T., 1899, No. 50, on verdict for defendant in case of Commonwealth ex rel. v. The Punxsutawney Water Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Quo warranto to forfeit a charter. Before Gordon, P. J.

At the trial it appeared that the defendant company was incorporated on May 3, 1887, to supply water to the borough of Punxsutawney and its inhabitants. On February 27, 1899, John L. Wentz and others incorporated the Lindsey Water Company to supply Clayville, a borough abutting against Punxsutawney. Prior to this time Wentz had bought from

the individual stockholders of the Punxsutawney Water Company a majority of the stock of that company. This stock he transferred to the Lindsey Water Company. On April 15, 1899, the Lindsey Water Company executed a mortgage, the description of the property in which covered the property of the Punxsutawney Water Company. On September 21, 1899, after the institution of this proceeding, the Punxsutawney entered into an agreement with the Lindsey Water Company by which in consideration of $100 per month " the Punxsutawney Water Company agrees to furnish the Lindsey Water Company with an ample supply of water for their customers until said company completes their lines, dam, reservoir, etc., and can supply their patrons with water from Clover Run. Conditioned, however, that in case at any time the wells or source of supply of the Punxsutawney Water Company might be diminished so as to injure the supply necessary for the use of said Punxsutawney Water Company and all of its patrons, contracts, etc., that the said Punxsutawney Water Company shall have the right to cancel this agreement, and cut off said water supply on twenty-four hours' notice to the said Lindsey Water Company, or its agent or representative."

The plaintiff presented the following points:

1. It appearing by the books of the defendant company and other testimony in the case, that under the option dated February 2, 1899, and in pursuance thereof, J. L. Wentz became the owner of a majority of the shares of capital stock of the defendant company early in April, 1899, thereby obtaining control of the corporation and its corporate property and franchises, and it also appearing by the resolutions and minutes of the Lindsey Water Company, with which he was connected, that his purchase was in the interest of that company, and that the purchase money was provided for by it, and that thereupon a mortgage was executed by the Lindsey Water Company covering the property of the defendant company, of which the remaining stockholders who had not parted with their stock had notice, and that no objection or protest was made by said stockholders, and that the same persons who had been and were directors and officers of the defendant company became and were at the same time also directors and officers of the Lindsey Water Company; and that in pursuance with the agreement,

the taxes at the state department were, on the application of the defendant company's treasurer, J. L. Wentz, adjusted and paid on the basis that on March 1, 1899, the stock of the defendant company had become the stock of the Lindsey Water Company, and that J. L. Wentz, the vendee of the stockholders of the defendant company, who was also treasurer of that company, together with the other persons who were directors of that company and also of the Lindsey Water Company, procured and enacted a resolution of the Lindsey Water Company by which a trustee was appointed, and thereupon a supplementary writing to the said mortgage, executed by E. J. Robinson, as president, and J. L. Wentz, as secretary of the Lindsey Water Company, by which all the stock acquired from the defendant company as aforesaid was impounded and subject to the indebtedness under the mortgage, and by special provision the dividends thereon to be applied to the indebtedness, and the method of voting the shares of stock aforesaid controlled in the interest entirely of the Lindsey Water Company and its mortgage indebtedness; these facts exhibit such a transaction and combination as violates the condition upon which the charter of the defendant company was granted, and the verdict must be for the complainant. *Answer:* We decline to instruct you as thus requested. The acts complained of did not affect the franchises or property of the respondent corporation, but merely resulted in the acquisition of stock from its shareholders. Whatever the intention of the promoter may have been originally, the consummation of the scheme resulted in the acquisition of stock alone, and, while stock is a representative of stock or its value, the transfer of stock is not a transfer of the property of a corporation. [1]

2. If the jury believe from the testimony in the cause, including the option of February 2, 1899, and the transfer of the stock to Wentz as shown by said books of the defendant company, and the agency of said Wentz for the Lindsey Water Company, and the use made by the Lindsey Water Company, and the fact that the same persons were directors of both companies at the same time, and the stipulation in the supplementary mortgage as to the control of this stock with respect to the indebtedness under the mortgage, and the mode of voting the stock, and the application for adjustment of taxes at the

state department, and the adjustment and payment thereof; that the purpose of the transaction was to put the control of the defendant company and its property in the hands of the Lindsey Water Company, and that the stockholders not selling their stock with notice or knowledge of the purpose of Wentz to obtain control of the company, made no objection or protest thereto, then the defendant company has so acted as to incur the forfeiture of its charter rights, and the verdict must be for the defendant. *Answer :* This point is also refused. Had the effect of what was done resulted in interference with the rights of the borough of Punxsutawney or its citizens, and the jury would find the purpose of the transaction to be as stated, the point would be well taken, but the evidence fails to show any interference with these rights. The water service to the borough and its inhabitants has not been interfered with. It, as much as ever, will possess the right at the expiration of twenty years to retake the plant. And, while another corporation owns a majority of the stock, and, as a consequence, controls the corporation, it owns neither its franchises nor its property. The interests of these water company stockholders, in common with the other holders of stock, are practically identical with those of the borough. [2]

The court charged in part as follows :

[The evidence shows all of these parties acted in their individual capacities. They did not purport or pretend to bind the corporation, and while the option contract for the sale of stock as signed, purported to include the property of the corporation, as well as the stock they held, that proposition was not accepted. The original intention, as appears by the testimony, was to purchase outright, and consolidate the Punxsutawney corporation with the Lindsey Water Company. It further appears by the testimony that that purpose was changed after the promoter took the advice of counsel, and discovered that it was either illegal or an imprudent thing to do, and instead, therefore, of acquiring the property and franchises of the respondent corporation, they acquired simply a majority of its stock, and, with a view of controlling the corporation, refusing to have anything to do with the matter unless they could purchase the controlling interest. Instead, therefore, of carrying

out the terms of the proposition contained in the stockholders' optional contract, a new condition was imposed by the purchaser of the stock, to wit: a deduction from each share of its proportionate part of the debt of the corporation, and a transfer of the stock alone.] [3]

[All who signed the option contract did not accept the new conditions and did not transfer their stock. Those who did accept transferred the stock alone under a new arrangement]. [4]

[Much was said, during the progress of the trial, about the acts of the Lindsey Water Company, especially its act in buying the Punxsutawney Water Company's stock, and mortgaging the property, as well as the stock, of the Punxsutawney Water Company; and also about the right of one corporation to purchase stock of another corporation. Now, whether it had any right to do this, or the other acts complained of done and committed by it, is a matter between that corporation and its creditors on the one hand, and between it and the borough of Clayville and its citizens on the other; and whether its purchase of the Punxsutawney Water Company's stock was legal or void is a matter between it and the other stockholders, and also the borough of Punxsutawney. But as it did not acquire title to the property and franchises of the Punxsutawney, it could not incumber them by a mortgage, and its purporting to do so did not require the Punxsutawney Company or its stockholders to move in the matter for the protection of their rights, and their failure to do so would not be such acquiescence as would work a ratification of such illegal act.] [5]

[Ratification is the confirmation of an unauthorized act. Here there was no pretense of binding the corporation. As stated before, each stockholder in selling his stock, acted in his individual capacity; did not assume to act for the corporation.

The other stockholders, it is true, all, or nearly all of them, exhibited a willingness, and made an effort to thus dispose of their stock, but each was acting for himself, and for his financial gain. In fact they almost seemed to climb over each other in order to dispose of their stock, feeling that they were getting more at the time from the promoter of the Lindsey Water Company than it was worth in the market. But there were no acts of the corporation, or of anybody purporting to act for it,

to be ratified; nor is there evidence of acquiescence such as would estop them.] [6]

[A corporation is not bound by the officers or affected by notice to them, except when they are acting in their official capacity.

This is an important case. It involves, as claimed and admitted here, a new question, and it is entirely right and proper that it should be passed upon by the highest tribunal in the state. Important interests are dependent upon it, and it will be reviewed by such court, and the respondents have the benefit of having their whole case before that tribunal.] [7]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*Thomas H. Murray,* with him *Jeff. G. Wingert* and *Allison O. Smith,* for appellant.—A water company cannot sell its property and franchises, or consolidate with another corporation: Foster v. Fowler, 60 Pa. 27; Guest v. Merion Water Co., 142 Pa. 610; People v. N. R. Sugar Refining Co., 22 A. & E. Corp. Cases, 523.

What it cannot do directly, in this respect, it cannot purposely and intentionally do indirectly and by means of a device such as was resorted to here: 1 Cook on Corporations, sec. 315 and notes; Central R. R. Co. of N. J. v. P. R. R. Co., 31 N. J. Eq. 474; Penna. R. Co. v. Com., 7 Atl. Repr. 374; Goodwin v. Cincinnati Canal Co., 18 Ohio St. 169; Wright v. Oroville Mfg. Co., 40 Cal. 20; Thomas v. West Jersey R. R. Co., 101 U. S. 71; Scranton Electric Co.'s Appeal, 122 Pa. 154; People of N. Y. v. Kingston and Middletown Road Co., 23 Wend. 205.

Unofficial and unauthorized acts become binding on corporators by their silence after knowledge: Kelsey v. National Bank of Crawford Co., 69 Pa. 426; Gordon v. Preston, 1 Watts, 385; Manhattan Hardware Co. v. Roland, 128 Pa. 119.

The effect of the transfer was to vest in the new company complete control of defendant corporation and its property, by the acts of a majority of its stockholders, and with the knowledge of all.

*Charles Corbet* and *George A. Jenks,* with them *James H.*

*Torrey, W. W. Winslow, John E. Calderwood, C. Z. Gordon* and *A. L. Cole,* for appellee.—The desire or intent of John L. Wentz or other persons to merge the Punxsutawney Water Company and the Lindsey Water Company, unexecuted, will not warrant a forfeiture of the charter of the Punxsutawney Water Company, even if it had joined in the purpose to do so. Still less can it be punished when it never did nor intended to join in the proposed merger: Com. v. Pittsburg & Connellsville R. R. Co., 58 Pa. 26 ; Bergner & Engel Brewing Co. v. The Commercial Exchange of Philadelphia, 12 W. N. C. 461.

OPINION BY MR. JUSTICE BROWN, January 7, 1901 :

If the allegations in the suggestion of the attorney general upon which the quo warranto issued in this case, had been sustained by proofs, the appellant would be here justly complaining of the judgment below ; but they were not so supported, and the appeal must be dismissed.

The Punxsutawney Water Company was " formed for the purpose of supplying water for the public at the borough of Punxsutawney and to persons, partnerships and associations residing therein and adjacent thereto, as may desire the same." This proceeding was instituted for the forfeiture of its charter on the grounds of alleged misuser and nonuser of its corporate franchises and privileges. It was neither alleged nor proven that the appellee had been derelict in the discharge of its duty to supply water to the borough of Punxsutawney as imposed by its charter; on the other hand, it appears that this duty had been and continues to be, faithfully performed, and in the language of the learned trial judge in his charge to the jury, " the water service to the borough and its inhabitants has not been interfered with." No forfeiture of the company's franchises could have been declared for disregard of this prime duty.

The reason assigned for asking that the company's charter be taken from it is, that by its own acts it had lost its existence, having conveyed its property and franchises to the Lindsey Water Company, and incapacitated itself from performing its corporate duties. In its answer to the information filed against it, the appellee specifically denies every allegation that it had done or permitted to be done, the unlawful acts complained of. These charges are that it had fraudulently and unlawfully en-

tered into a combination or agreement with the Lindsey Water Company to convey to and vest in the latter the control, management and supervision of its business, franchises, property and waterworks, and in carrying out such combination or agreement had lost its identity and virtually become extinct, to the great wrong and injury of the complainant. They are denied, and the record will be searched in vain to find either of them supported by proof that the appellee ever did anything relating to the Lindsey Water Company, which was supplying water to the borough of Clayville abutting against Punxsutawney, except to agree temporarily to supply that company with water, and only upon condition that it could terminate the agreement upon twenty-four hours' notice, whenever it might need all of its water for supplying its own customers. This agreement, referred to in the information as evidence of the truth of the appellant's allegation that the appellee had ceased to exist, is evidence to the contrary, for the chief concern of the respondent, on the face of the agreement, is its continued full supply of water to its own patrons. Such an agreement was no ground for forfeiture. As long as the temporary supply of water to the other company, upon the condition stated, did not interfere with the supply which the appellee owed to " the borough of Punxsutawney and to the persons, partnerships and associations residing therein," no wrong was done for which its life ought to be taken.

Having failed to point out any act of the appellee calling for forfeiture, the appellant alleges that what a majority of the stockholders of the former did with their stock, giving the Lindsey Water Company practical control of the Punxsutawney Water Company, should be regarded as the misconduct of the latter, meriting summary punishment. What a majority of the stockholders did was to sell their stock, as was their right, and through the purchaser it passed into the control of the Lindsey Water Company; but the individual stockholders, as clearly appears from the testimony, sold to an individual, who purchased and paid for it with individual money, and, though such sales may have given to the Lindsey Water Company, subsequently acquiring the stock, a controlling interest in the Punxsutawney Water Company, the latter could not have prevented the sales, and, not having been a party to them, is not to be accountable for them, or for their effect. The Lindsey Water Company by acquiring

a majority of the capital stock of the Punxsutawney Water Company did not acquire the property and franchises of the latter. The transfer of a majority of the stock was not a transfer of the property of the company. The transfer was of the rights of the stockholders, and the existence of the corporation was in no manner affected by it. It is being continued, subject to the supervision of the commonwealth, with the right to go on in the exercise of its privileges and the performance of its duties until, by some act of its own, either of omission or commission, the penalty will be forfeiture. No misconduct of the Lindsey Water Company and nothing that one or more of a majority of the stockholders of the appellee may have done in disposing of their stock, can be charged to it. If it is to perish, it must be for its own sins and not for those of another.

We have no concern on this appeal with what the Lindsey Water Company is alleged to have done. Certainly nothing has been disclosed showing that the property of the appellee has passed to it. If it has undertaken to exercise control over the same, and to mortgage what it does not own, the appellee is not affected. All the rights of the latter, as they came from the commonwealth, are still secure and will be protected from invasion. Its duty, heretofore faithfully discharged to supply water to the territory and people named in its charter, still continues, and having maintained its distinct identity, existence and organization, the learned trial judge correctly told the jury that it could not be struck down upon the unsupported allegations of the complainant, no matter what the conduct of others may have been. All the assignments of error are overruled and the judgment is affirmed.